# UNITED STATES DISTRCT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK SOKOLICH, in his capacity as the mayor of Fort Lee and a resident of Fort Lee, and RICHARD GALLER individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, FEDERAL HIGHWAY ADMINISTRATION, SHAILEN BHATT, in his official capacity as Administrator of the Federal Highway Administration, and RICHARD J. MARQUIS, in his official capacity as Division Administrator of the New York Division of the Federal Highway Administration; THE METROPOLITAN TRANSIT AUTHORITY (MTA),  JOHN JANNO LIEBER, in his official capacity as Chair and CEO of the MTA, the TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY (TBTA), DANIEL DECRESCENZO, in his official capacity as President of the  (TBTA), the TRAFFIC MOBILITY REVIEW BOARD (TMRB), CARL WEISBROD, in his capacity as Chair of the (TMRB) .<br><br>     Defendants. | Civil Action No. 2:23-cv-21728<br><br><br>**AMENDED<br>CLASS ACTION COMPLAINT<br>AND JURY TRIAL DEMAND** |

  Plaintiffs MARK SOKOLICH, in his capacity as the mayor of Fort Lee, and on behalf of all other government officials and residents of Bergen County and the area surrounding the George Washington Bridge that will be impacted by individuals impacted by the New York Central Business District Tolling Program, ("congestion pricing scheme") and Mr. Richard Galler, individually and on behalf of  classes of similarly situated individuals; (i)  suffering from asthma

who will be subject to increased respiratory injury and (ii) commuters to New York City who will be subjected to increased tolls and/or inconvenience and cost of rerouting in order to avoid congestion pricing, through their counsel, Nagel Rice LLP, initiate this proposed class action and allege as follows:

**Nature of the Case**

1. This case arises from the Federal Highway Authority's (FHWA) June 27, 2023 decision to approve the environmental review phase of New York's Central Business District Tolling Program which imposes an additional toll on drivers in Manhattan's Central Business District. This approval was imprudently given without the preparation of a complete environmental impact statement (EIS).

2. On June 27, 2023, the FWHA issued a finding of No Significant Impact (FONSI) related to the CBD Tolling Program. According to Project Updates from the MTA, Contractors now have up to 310 days from that approval date "to complete the design, development, testing, and installation of the tolling system and equipment, and the TBTA Board must adopt a toll structure, before toll collection can begin." (See Project Update annexed as Exhibit A)

3. Consequently, in less than one year, if action is not taken, all vehicles that are driving on 60th Street in Manhattan and roadways south of 60th Street, except for FDR Drive, the West Side Highway,9A, Battery Park Underpass, and any surface roadway portions of the Hugh L. Carey Tunnel connecting to West Street will be subject to a hefty charge on their E-ZPass, (or bills will be mail to the registered vehicle owner and paid using Tolls by Mail). The TMRB has to recommend the toll rates to the TBTA but it was estimated prior to the EA approval that it would be $23 per automobile and higher for commercial vehicles.

4. The Defendant TBTA has the final say with respect to the design, development, building and running of the CBD Tolling Program. However, the Defendant TMRB, and the appointed chair and five-member panel, (also named as Defendants) are presently already working on recommending a tolling structure for the CBD Tolling Program, having met on July 19, 2023 and again on August 17, 2023, with additional meetings soon to be scheduled.

5. On July 21, 2023, an action was commenced on behalf of the State of New Jersey against various federal entities relating to this premature approval captioned as *State of New Jersey v United States Department of Transportation, et al*, Case No. 2:23-cv-03885-BRM-LDW. Plaintiffs herein adopt and incorporate by reference the allegations of that Complaint and agree with the remedies sought in that action. However, Plaintiffs seek additional remedies for injuries flowing from the CBD Tolling Program as well as relief on behalf of two separate classes.

6. Plaintiffs bring this case on their own behalf and on behalf of two classes seeking both injunctive relief in the form of a judicially mandated review of the approval process used by the FHWA in its approval of the CBD program without adequately considering the consequences of the program on New Jersey, and the creation of a fund designed to remediate the acknowledged increase in traffic in Bergen County and the surrounding area, exacerbating noise and air pollution, the stress to New Jersey's mass transit infrastructure, and the deleterious health impact to New Jersey residents living in the vicinity of the George Washington Bridge and feeder roads.

**Jurisdictional and Venue Statement**

7. Federal jurisdiction exists by virtue of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453 and 1711–1715 since there are in excess of 100 class members and the named proposed class representatives and proposed class members' aggregate damages exceed $5,000,000.00, exclusive of interest and costs. Minimal diversity exists between

the parties with residency in different states. Additionally, the Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because this suit presents a federal question under the laws of the United States, including NEPA, the APA and the CAA.

8. This matter is ripe for judicial review as the Defendants are actively deciding on the specifics of the CBD Tolling Zone, costs and other terms and conditions which will have a direct impact on New Jersey residents in less than a year.

9. Venue is proper in this Court pursuant to 28 U.S.C §1391(e )(1)(B), because a substantial part of the events or omissions giving rise to New Jersey claims occurred in this District and the Federal District Courthouse in Newark is the most proximate to the events in this case.

**The Parties**

Plaintiffs

10. Plaintiff Mark Sokolich is a citizen of New Jersey, the mayor of Fort Lee and a lifelong resident of this Borough in New Jersey which is along the Hudson River on the New Jersey side. Fort Lee is the municipality that vehicles utilizing the George Washington Bridge must traverse and is thus is clearly a recipient of the increased traffic and pollution that will flow from the CBD congestion pricing scheme as it currently stands.

11. Plaintiff Richard Galler is a citizen of New Jersey and resident of Fort Lee. Mr. Galler suffers from Asthma which will be exacerbated by the increased traffic causing pollution to both Plaintiff and other residents in and around the surrounding area.

12. Plaintiff Galler also commutes into New York City and will be subjected to increased tolls and/or inconvenience and cost as a result of rerouting in order to avoid congestion pricing.

13. Defendant USDOT is the executive department of the federal government responsible for oversight of the transportation planning process, including implementing the requirements of NEPA, and ensuring conformity of federally developed, funded or approved transportation projects.

14. Defendant FHWA is a federal agency within the USDOT that supports state and local governments in the design, construction and maintenance of the Nation's highway system, including financial and technical assistance. This agency is responsible for ensuring that the activities it authorizes comply with governing federal environmental statutes, including NEPA and authorizes States to toll on federal roads and highways under the Value Pricing Pilot Program. (VPPP). The FHWSA issued the Final EA and FONSI for the congestion pricing scheme and must approve it under the VPPP; it was therefore required to perform a NEPA review pursuant to its regulations. 23 CFR Part 771.

15. Defendant Shailen Bhatt is the Administrator of the FHWA that must authorize the congestion pricing scheme and was responsible for the Final EA and FONSI. He is named in his official capacity.

16. Defendant Richard J. Marquis is the Division Administrator for the New York Division of the FHWA. He is responsible for and the signatory of the Final EA and FONSI.

17. Defendant Metropolitan Transportation Authority (MTA) is a public benefit corporation responsible for public transportation in the New York City metropolitan area of the State of New York.

18. Defendant, John Janno Lieber, is the Chair and CEO of the MTA.

19. The Triborough Bridge and Tunnel Authority (TBTA) is an affiliate of the MTA authorized to establish and charge variable tolls and fees. Under the Traffic Mobility Act, at N.Y.

Veh. & Traf. Law §§1704-a(3)(a) and 1704.  it is directed to establish a plan to toll vehicles entering or remaining in the Manhattan CBD.

20. Defendant, Daniel Decrescenzo, is the President of the TBTA.

21. Defendant, the Traffic Mobility Review Board, (TMRB) is a Board of one Chair and five members appointed by the TBTA. The TMRB will ultimately decide the toll price, the time period when the toll will be operative, credits to cars that access the Manhattan CBD through the tunnels and already pay a told to the Port Authority of New York and New Jersey, exemptions for taxis, pricing schemes for buses, small and large trucks, etc.

22. Defendant, Carl Weisbrod, is the Chair of the Traffic Mobility Review Board, (TMRB).

23. The TMRB has been holding public meetings but have not yet finalized the terms of the CBD tolling program to be finalized.

**Class Action Allegations**

24. The proposed class representatives bring this proposed action pursuant to Fed. R. Civ. P. 23(b)(1), 23(b)(2) and 23(b)(3) on behalf of themselves and all members of the proposed classes (or any other class authorized by the Court) defined as follows:

> **Inconvenience, Traffic and Expense Class**: New Jersey residents and public officials in New Jersey who will be compelled to take the George Washington Bridge to get into Manhattan to avoid the added expense of the CBD Tolling Program. Residents of Northern New Jersey and public officials in New Jersey who will be faced with increased traffic in their neighborhoods resulting from others drivers avoiding the Holland and Lincoln Tunnels due to the increased cost of the CBD Tolling Program. Residents of New Jersey and public officials in New Jersey who ordinarily take mass transit (NJT trains or buses or PATH) into Manhattan who will experience significant overcrowding and delays as a result of the additional people who will take mass transit without any upgrades to New Jersey's mass transit infrastructure.

**The Asthma/Respiratory Distress Class**: All New Jersey Residents including Environmental Justice Communities in New Jersey who will be subjected to increased air pollution as a result of the CBD Tolling Program leading to Asthma and other respiratory ailments or exacerbated Asthma or other respiratory ailments already being suffered by the members of this Class.

**Numerosity of the Class: Fed. R. Civ. P. 23(a)(1)**

25. The proposed classes are so numerous that individual joinder of all potential members is impracticable under Fed. R. Civ. P. 19 or 20. The CBD Tolling Program Environmental Assessment includes a chart showing Geographic area populations in total and broken out by groups from the U.S. Census Bureau, ACS 2015-2019 5 year estimates. According to these estimates there are 930,390 total residents of Bergen County. Of this, 5.3% are black, 19.9 percent are Hispanic, 43.4% are minority and 16.1% are low income. Clearly this satisfies the numerosity requirement.

**Ascertainability**

26. Plaintiff have adequately and objectively defined the Classes, as detaned above, so the court and class members will be able to use the definitions to determine class members.

**Existence of Common Questions of Law and Fact: Fed. R. Civ. P. 23(a)(2) and 23(b)(3).**

27. Common questions of law and fact exist as to all members of the proposed classes and predominate over issues of law and fact affecting individual members of the proposed classes. These issues include but are not limited to:

(a) Whether the Defendants improperly failed to consider and give appropriate weight in adopting the Final EA rather than undertaking a more thorough EIS to determine the true impact

7

that the congestion pricing plan would have on the residents of New Jersey, particularly Bergen County.

(b) Whether as a result of Defendants cursory consideration of the impact of the congestion pricing plan on New Jersey an EIS should be required prior to implementation of any congestion pricing scheme;

(c) Whether, as currently configured, residents of New Jersey, particularly Bergen County and the area feeding into the George Washington Bridge access, will suffer from an expected increase in respiratory illnesses, and exacerbation of pre-existing respiratory illnesses.

(d) Whether as currently configured, residents of New Jersey, particularly Bergen County and the area feeding into the George Washington Bridge access, will face increased traffic and congestion leading to a worsening of the quality of life for the surrounding community.

(e) Whether as currently configured, all residents of New Jersey including those already using mass transit to get into Manhattan, will suffer from a much harder commute because of the lack of support for New Jersey's mass transit infrastructure which is also under-funded and suffered greatly during the Pandemic;

(f) Whether proposed class members are entitled to monetary damages and injunctive relief pursuant to Rule 23(b)(2);

(k) Whether the Court should establish a constructive trust fund to assist New Jersey with the expected increased incidence of asthma and other respiratory diseases as well as to partially defray the cost of improved mass transit infrastructure in New Jersey.

**Typicality of Claims or Defenses of a Definable Class: Fed. R. Civ. P. 23(a)(3).**

28. The proposed class representatives' claims and defenses are typical of the claims and defenses of proposed class members of each class.

(a) Class claims for the traffic, inconvenience and expense class arise out living in areas in New Jersey that will be impacted adversely by living in locations that will experience more traffic getting to and crossing the George Washington Bridge due to the impact of drivers attempting to avoid the CBD as a result of the imposition of the congestion pricing scheme.

(b) Class claims for the asthma respiratory distress class arise out of additional pollution anticipated by the individuals adversely impacted by living in locations that will experience more air pollution due to the increased traffic due to drivers attempting to avoid the CBD as a result of the imposition of the congestion pricing scheme

There are no defenses to plaintiffs' claims on the part of defendant that are unique or different from the proposed class.

**Adequate Representation: Fed. R. Civ. P. 23(a)(4).**

29. The proposed class representatives will fairly and adequately protect the interests of the proposed class and subclasses. The proposed class representatives' claims and the proposed class members' claims are so interrelated that the interests of the proposed class members will be fairly and adequately protected in their absence. The proposed class counsel are highly experienced in complex class actions, and have been appointed class counsel in numerous other class actions. Neither plaintiffs nor their attorneys have any interests that are contrary to or conflicting with the class members.

**Superiority of a Class Action: Fed. R. Civ. P. 23(b)(3).**

30. Maintenance of a class action in one court is the most economical procedural device to litigate for both class members and the defendants. Prosecution of separate actions by individual members of the class could create risk of inconsistent or varying adjudications with respect to

individual members of the class which would establish incompatible standards of conduct for the party opposing the class as recognized by Fed. R. Civ. P. 23(b)(1)(A).

31. Prosecution of separate actions by individual members of the class could create risk of adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of the other members of the class who are not parties to the adjudications or substantially impair or impede their ability to protect their interests as recognized by Fed. R. Civ. P. 23(b)(1)(B).

32. There is a substantial likelihood that the defendants will oppose this class action and will further act or refuse to act on grounds generally applicable to the class, thereby making it appropriate for the court to grant final injunctive relief or corresponding declaratory relief with respect to the class as a whole as recognized by Fed. R. Civ. P. 23(b)(2).

33. Questions of law and fact common to members of the classes predominate over any questions affecting any individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy as recognized by Fed. R. Civ. P. 23(b)(3).

## STATEMENT OF FACTS

34. For almost two decades New York has sought to implement a congestion pricing scheme, but early efforts failed. It was not until 2019 when the New York Legislature passed the MTA Reform and Traffic Mobility Act, that things started to move.

35. The Traffic Mobility Act was designed to create a revenue stream that "at minimum, ensure[s] annual revenues and fees collected under such program . . .fund fifteen billion dollars [] for … the 2020 to 2024 MTA capital program" as well as any successor programs while reducing traffic congestion with the Manhattan CBD. §N.Y. Veh. & Traf. Law 1704-a(1). This

act authorized the TBTA to 'establish and charge variable tolls and fees" and directed the TBTA to establish a plan to toll vehicles entering or remaining in the Manhattan CBD. Id 1§§704 a(3)(a), 1705.

36. Only four requirements were set forth in the Traffic Mobility Act with respect to the ultimate pricing scheme: (1) qualifying vehicles transporting persons with disabilities and authorized emergency vehicles are exempt; (2) passenger vehicles will be tolled no more than once a day; (3) residents whose primary residence is in Manhattan and whose New York State adjusted gross income is less than $60,0000 will be eligible for a tax credit equal to the amount of tolls paid per year; and (4) passenger vehicles that remain in the Manhattan CBD that are detected when leaving but were not detected entering the same day, will be charged for remaining in the CBD. See id §1704-a (2).

37. All the other terms of the congestion pricing scheme are left to the TBTA and the TMRB that it appointed.

38. In the 2019-2020 budget the New York State Legislature authorized the congestion pricing scheme mandating that it be implemented no earlier than December 31, 2020. Thereafter, the TBTA, NYSDOT and NYC DOT (herein "Plan Sponsors") began developing proposals for the congestion pricing scheme.

39. When the COVID 19 pandemic hit, the MTA's revenues dropped precipitously, and the MTA received over $15 billion in pandemic relief between May 2020 and March 2022. Members of Congress called for investigations regarding MTA mismanagement in October 2022.

40. In 2021, the FHWA indicated that it would "Fast Track Congestion Pricing and produce an EA before beginning its required formal assessment under NEPA. This was confirmed in February 2021 by Janno Lieber.

41. Shortly thereafter, the FHWA authorized the MTA and the New York transportation agencies to proceed with a NEPA Class III EA pursuant to 23 C.F.R. 771. Although the authorization letter indicated that the EA would require "enhanced coordination and public involvement that engages stakeholder from throughout all three States", but this was an empty promise.

42. Before implementation the congestion pricing scheme finally agreed to will have to be admitted to the VPPP. Hence after enactment of the Traffic Mobility Act, the Plan Sponsors submitted an Expression of Interest to the FHWA seeking tolling authority under the VPPP to implement its congestion pricing scheme. However, thus far, the FHWA has not approved the congestion pricing scheme for admission to the VPPP.

43. The TMRB has already held two public meetings to discuss several open issues, which include the toll price, the time period when the toll will be operative, any credits to cars to access the CBD through the tunnels and already pay a $14 toll to the Port Authority of New York and New Jersey, whether there should be exemption for taxis, how Uber and Lift will be charged, pricing schemes for buses, small and large trunks etc. Throughout these meetings, whenever a member of the Board raises an issue regarding a burden on commuters they are reminded that a reduction in the amount of the toll will adversely impact the goal of the MTA Reform and Traffic Mobility Act to fund fifteen billion dollars for the MTA capital program. Clearly, raising money to solve the MTAs financial woes takes precedence in coming up with a viable congestion pricing scheme.

44. Each of these scenarios have a different impact on commuters from New Jersey (as well as New York) and a different impact on the traffic and financial burden on commuters, as

well as a different impact on the pollution that will ultimately be experienced by both New York and New Jersey residents.

45. It is almost inconceivable that a Final FONSI was issued when the Final EA described seven different possible tolling scenarios which remain open and will not be decided until the TMRB completes its work and the TBTA accepts its recommendations.

46. In March 2023, the MTA reportedly submitted a secret memo to the FHWA indicating it would commit to spending $130 million towards mitigation measures for New York communities with environmental justice concerns, almost all coming from congestion pricing measures. None of the measures addressed potential harms to New Jersey as a result of the congestion pricing scheme. Moreover, because this memo was not make public New Jersey and other interested stakeholders had no ability to comment.

47. In early May 2023, the FHWA published its Final EA. Although several mitigation measures were added none addressed issues identified by New Jersey.

48. Although the FONSI was issued, the MTA had indicated that "Certain environmental justice communities will benefit from decreased traffic: some communities that are already overburdened by pre-existing air pollution and chronic disease could see an adverse effect as a result of increased traffic." Among the areas mentioned which are in New Jersey are Orange, East Orange, Newark and Fort Lee.

49. The Plan Sponsors have indicated that they will fund neighborhood asthma center in the Bronx, and monitor PM2.5 (a measure of fine inhalable particles) to determine whether changes in air pollution are occurring in New York, expand clean trucks program and off-hours delivery program, replace diesel burning trucks and coordinate to expand electric truck charging

infrastructure, as well as install or upgrade air filtration in New York school, no such promise has been made to alleviate the suffering in New Jersey that will result from instituting the CBP.

50. Additionally, the FONSI acknowledged that truck traffic on I-95 in Bergen County will increase by up to 1,000 trucks and cost will increase for all drivers in New Jersey under each of the seven scenarios under consideration.

51. The April 2023 Environmental Assessment showed in an increase in emission and toxins in Bergen County in 2023 and in 2045, including Volatile Organic Compounds, nitrogen oxides, particulate matter (both $PM_{10}$ and $PM_{2.5}$), carbon monoxide and Carbon Dioxide Equivalents ($CO_2 e$). Traffic crossing at the Lincoln and Holland Tunnel for 2023 was almost 110,000 daily crossings. This is projected to decline by 20% with the implementation of congestion pricing. However, many of these vehicles are already being driven by individuals who are unable to use mass transit in Manhattan for a myriad of reasons, hence, these drivers will either have to pay an economically prohibitive congestion pricing toll or will have to increase pollution in New Jersey by driving up to and crossing the George Washington Bridge, adding insult to injury for New Jersey residents.

52. The FONSI acknowledges that there will be an increased cost to drivers under all tolling scenarios.

53. The Final EA and FONSI fails to propose or commit to or mitigate any of the impacts on New Jersey, failed to consult with New Jersey communities or include recommendations by the EPA and never considered how each possible scenario would affect New Jersey.

## COUNT I

### (DECLARATORY JUDGEMENT UNDER THE DECLARATORY JUDGMENT ACT)
(On Behalf of both Classes )

54. The proposed class representatives and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

55. An actual, substantial, and justiciable controversy has arisen and exists between Plaintiffs and the Class members and Defendants herein and their respective rights, obligations and duties with respect to the improper and insufficient evaluation of the Congestion Pricing Plan leading to increased costs, congestion, inconvenience and pollution and physical harm to Plaintiffs' and Class members' bodies in New Jersey as a result of Defendants' acts and/or omissions.

56. By reason of the foregoing, Plaintiffs and the Class members seek a declaratory judgment against Defendants that Defendants are liable and responsible for the increased costs, congestion inconvenience, pollution and physical harm to Plaintiffs' and Class members' bodies and all equitable and/or injunctive relief, and such other relief as the Court may Order, that the Court deems reasonable and appropriate in relation thereto.

## COUNT II

### REQUEST FOR MEDICAL MONITORING
(On Behalf of the Asthma/Respiratory Distress Class)

57. The proposed class representatives and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

58. As a direct result of Defendants actions and omission in failing to probably conduct an EIS, Plaintiffs and the proposed Class have sustained and will continue to sustain physical

15

injury and/or irreparable harm in the form of experiencing poor air quality and increased pollutants impacting their respiratory tract causing and/or exacerbating asthma they are already experiencing as a result of Defendants' acts and/or omissions.

59. As a result, Plaintiffs and the Asthma/Respiratory Distress Class seek equitable and/or injunctive relief, including the formation of a medical monitoring program, which is the most appropriate method by which it can be determined whether a particular individual has contracted or been subject to increase harm for a respiratory disease caused by the increased pollution .

60. In Particular, Plaintiff and the Asthma/Respiratory Distress Class seek the establishment of an independent panel of scientists, including but not limited to epidemiologists, toxicologists, medical doctors, and/or exposure-risk assessors to be jointly selected by the parties and paid for by Defendants, and tasked with evaluating, reviewing, identifying and notifying/informing the Asthma/Respiratory Distress Class of the causal connection between any single or combination of toxins experienced by the New Jersey citizens impacted by the increased toxins caused by the congestion pricing plan sufficient to warrant any personal injury compensation or future diagnostic medical testing, including medical monitoring.

61. Additionally, Defendants should be required to pay for the medical monitoring of all class members, as frequently as determined to be medically necessary, as well as to pay for notification of class members in writing of the medical monitoring program, as well as the cost of doctor recommended treatment.

## **COUNT III**

### **INJUNCTIVE RELIEF**
(On Behalf of all Classes)

62. The proposed class representatives and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

63. As set forth in the Complaint filed by the State of New Jersey, the FHWA's Final EA and FONSI were inadequately prepared, and failed to consider the safety and well-being of neighboring states greatly impacted by the congestion pricing scheme by failing to provide an Environmental Impact Statement, failure to mitigate air and noise pollution on New Jersey and its residents, failing to consider the impact that congestion pricing will have on New Jersey communities with Environmental Justice concerns, failure to analyze reasonable alternatives, and failing to provide for adequate community involvement in rushing to pass congestion pricing to fund the MTA at the expense of New Jersey.

64. For this and other reasons detailed more fully in the State of New Jersey's Complaint, the Final EA and FONSI should be deemed arbitrary and capricious, unlawful and must be set aside.

## **RELIEF DEMANDED**

Wherefore, proposed class representatives for all classes request:

(a) A proposed Order pursuant to Fed. R. Civ. P. 23(c) certifying the classes;

(b) An Order appointing proposed class representatives as representatives of the proposed class and designating the law firm Nagel Rice LLP as counsel for the proposed class pursuant to Fed. R. Civ. P. 23(g);

(c) Judgment for proposed class representatives and proposed class members against the defendant on all issues and counts;

(d) A preliminary and permanent injunction vacating and setting aside Defendants' FONSI and Final EA and compelling Defendants to complete a full and proper EIS for the Manhattan CBD;

(e ) Order the FHWA to prepare a full and proper EIS for the Manhattan CBD Tolling Program that properly includes the impact on New Jersey;

(f) In the event the Court does not set aside the FONSI and Final EA, an order providing for funding by the State of New York of a medical monitoring program to evaluate and treat respiratory distress and asthma resulting from the Manhattan CBD Tolling Program.

(g) In the event the Court does not set aside the FONSI and Final EA, an Order providing for funding by the State of New York of a monetary fund to help defray the increased costs to drivers who are forced to pay the increased cost of going through the Holland or Lincoln Tunnels, or the increased expense of driving the extra miles and expending money on additional gasoline to reach the George Washington Bridge, and the lost economic value of the time spent due to increased travel and travel delays.

(h) Awarding Plaintiffs and the Class its costs for the action including reasonable attorneys' fees; and

(i) All other relief as this Court deems just and proper.

(j) Any other relief deemed necessary by this Court.

## **REQUEST FOR JURY TRIAL**

The proposed class representatives and proposed class members request trial by jury on all issues and counts.

*s/ Bruce Nagel*
Bruce H. Nagel, Esq.
Randee M. Matloff, Esq.
**NAGEL RICE, LLP**
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
bnagel@nagelrice.com

*Attorneys for Plaintiffs*

Dated: November 1, 2023